UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 15-22013-CIV-ALTONAGA/O'SULLIVAN

SONIA SORDO,

    Plaintiff,

vs.

TRAIL AUTO TAG AGENCY, INC.,
a Florida corporation,

    Defendant.
_____/

### **DEFENDANT'S MOTION FOR FINAL SUMMARY JUDGMENT**

COMES NOW, Defendant, TRAIL AUTO TAG AGENCY, INC., by and through its undersigned attorney, hereby moves for Final Summary Judgment, and states:

### **Preamble**

Plaintiff brings this action pursuant to the Age Discrimination in Employment Act, 29 USC § 621 et seq., as amended, (hereinafter "ADEA") and the Florida Civil Rights Act, § 760.01, et seq. (The "FCRA"). Plaintiff alleges that her employment was unlawfully terminated on September 3, 2014, because of her age. [D.E. 1]. On September 3, 2014, Defendant laid off Plaintiff because it lost its biggest customer and approximately 60% of its revenues. Prior to laying off Plaintiff and three other employees a committee was formed to determine which employees could remain working and which employees should be laid off. SORDO was chosen as one of the four employees who were laid off. In addition, two other employees ceased to work with Defendant in 2014, prior to the time when Plaintiff was laid off. There were multiple legitimate business reasons why SORDO was laid off, because she did not perform the job duties

required for her position. Summary Final Judgment should be entered against Plaintiff because she cannot refute Defendant's legitimate business reasons for laying her off.

### STATEMENT OF UNDISPUTED FACTS

### The Sworn Declaration of Richard Prete, the Decision Maker for Trail Auto Tag Agency, Inc.

1.	Richard Prete is the owner of the Defendant, TRAIL AUTO TAG AGENCY, INC., a tag agency. He is also the decision maker for Defendant. (Exhibit 1).

2.	Plaintiff, SONIA SORDO was employed at the Defendant tag agency from September 3, 1991 until September 3, 2014. Ms. Sordo was a title clerk responsible for processing titles and registrations for the agency. Ms. Sordo also had ancillary duties which included, keeping track of auto tag inventory.

3.	In 2014, the auto tag agency's biggest client was a franchised automobile dealer, Kendall Group. The group included four automobile dealerships, Kendall Toyota, Kendall Lexus, West Kendall Toyota and West Kendall Lexus. Defendant registered titles and issued auto tags for Kendall Group. In 2014, prior to the time that Plaintiff ceased to be employed with Defendant, approximately 1,500 to 2,000 transactions were processed each month for the Kendall Group.

4.	In the year 2014, Kendall Group began using new technology to process title work and register automobiles. The biggest source of income for the Defendant agency in 2014 was from the Kendall Group. I have personal knowledge from review of the financial records for the agency that approximately 60% of the Defendant tag agency's revenues were lost as a result of losing Kendall Group's business. As a result of the loss in revenues, it was necessary for the Defendant agency to look for ways in which to reduce the expenses and costs of operations.

5. In 2014, a committee was organized to determine how the tag agency could reduce the costs of operations in order to continue in business. The committee made a unanimous decision to reduce the workforce so that the business could continue its operations. Thereafter, four employees were laid off, including, the Plaintiff SORDO.

6. I was a member of the committee, as well Alicia Valledor, Ileana Pita and Luisa Coto. These individuals were employees of the agency and were the most familiar with the day-to-day operations of the company. Each such individual provided input and recommendations to me concerning the reduction of the work force at the auto tag agency.

7. The committee considered several factors in determining which members of the workforce would be laid off. The first and major consideration was whether particular positions were needed and weather the business could continue to operate after eliminating such positions. Another factor considered was the skills, effectiveness and experience of the staff. The committee also considered the reliability of each employee and whether such employees were willing to work full time as opposed to part time. The committee also considered the willingness or flexibility of the staff member to cover all positions at the agency as opposed to the employees' reluctance to work at one or more positions. Another factor considered was employee productivity. Given that the revenues for the agency had declined significantly, it was necessary to consider employees with a heightened effort, work ethic and flexibility.

8. The committee decided to lay off a total of four employees. Plaintiff SORDO was one of the four employees who were laid off. The other employees laid off were: Yanet Gonzalez, the youngest employee at the agency, 36 years old at the time, Natinda Brizuela and Barbara Martinez.

9. In addition, prior to September 3, 2014, two other employees left their employment at the auto tag agency, Veronica Rodriguez and Elvia Guevara. In total, Defendant's staff was reduced by six employees in 2014.

10. I personally observed SORDO using her cellular telephone during working hours for long periods of time and playing games on her cellular telephone in 2014. I personally reprimanded SORDO for excessive use of her personal cellular phone in 2014, but she continued the excessive use of her cell phone in 2014. In addition, there were numerous reports by other employees who observed SORDO's excessive use of the cellular telephone. Luisa Coto, the line supervisor, a member of the committee, also observed SORDO playing games on her cellular telephone and using her cellular telephone to make an excessive number of calls, all during business hours. The committee considered this information as well.

11. SORDO was also previously reprimanded by me because she refused to take the Miami-Dade Title Clerk exam. The exam is important because the tag agency cannot be opened unless a certified clerk is present. None of the other three employees who were laid off had the certification. The committee considered this information as well.

12. SORDO was inflexible about her schedule. SORDO did not want to work past 2:00 p.m., and often left her job prior to that time.

13. SORDO was not a team player. She was unwilling to assist her co-workers while she was spending idle time or while engaged in making personal cellular telephone calls or playing games on her cellular telephone. She displayed a lack of interest in performing her job duties and I personally observed this behavior on her part.

14. SORDO was responsible for inventory at the tag agency. She did not perform her job duties in that she was unable to control the inventory. SORDO failed to order tags on a

timely basis causing the company to run out of tags when needed to serve customers. There were a number of tags which were unaccounted for and Defendant had to pay the cost of such tags to the State of Florida. Between 2011 and 2014, the agency had to repay the State of Florida $1,671.00 for lost tags. Since SORDO ceased to be employed, the company has not incurred any lost tag penalties. Moreover, as a result of the misplaced auto tags, other employees' time was used looking for the lost auto tags to find them. This disrupted the business operation because of SORDO's deficiencies in performing her inventory related duties.

15.     SORDO was also reluctant to work on the public line in the afternoon. The public line was where customers of the agency came in and dealt with the agency's employees in relation to automobile license plates and registration of titles for vehicles and vessels. It was essential to the success of the agency to have a clerk who was willing to work with the retail customers in order to ensure fast and efficient service. SORDO was reluctant to work the line in the afternoons. She was also reluctant to help her co-workers when they were working the line and needed SORDO's assistance.

16.     SORDO had limited effectiveness and she often engaged the help of other clerks thereby distracting them from doing their job and disrupting the effective and efficient operation of the agency's business affairs.

17.     When the committee met, it considered employee efficiency. SORDO ranked near the bottom among the clerks for efficiency.

18.     SORDO was not replaced by a younger individual because no one was hired to replace her or to take over her job duties. All duties previously performed by SORDO were assumed by other employees who remained working at the agency.

19. As a result of the aforementioned business reasons SORDO was laid off from further employment with TRAIL AUTO TAG AGENCY, INC., on September 3, 2014.

**Plaintiff's Deposition Testimony**

20. Plaintiff made a decision to leave her work earlier at 2:00 p.m., rather than 2:30 p.m., for personal reasons. (Exhibit 2- Depo.Sordo p. 22 L23-25; p. 23 L1-3). In emergency situations, Plaintiff left her work even earlier. (Exhibit 2- Depo.Sordo p. 24 L5-7).

21. Plaintiff's mother had senile dementia. She is the only daughter and she had a responsibility to her mother. (Exhibit 2- Depo.Sordo p. 26 L5-6). Plaintiff would sometimes make phone calls to her mother during working hours. (Exhibit 2- Depo.Sordo p. 27 L3-5). In the year 2014, Plaintiff would call her mother 2 to 3 times a day. Plaintiff would speak to her mother for about five minutes each time. (Exhibit 2- Depo.Sordo p. 27 L10-7). Plaintiff admitted that she would use her cellular telephone to play games during times when she had a break. During those 15 minutes. (Exhibit 2- Depo.Sordo p. 28 L21-25).

22. Plaintiff was a supervisor when employed with Defendant. One of her responsibilities was to keep track of the inventory as well as other clerks. (Exhibit 2- Depo.Sordo p. 8 L12-24; p. 9 L8-12). Plaintiff conceded that sometimes clerks would issue the wrong license plate, it happened "All the time." (Exhibit 2- Depo.Sordo p. 30 L16-19). When the clerks committed such mistakes and a license plate was not returned, the Defendant would have to pay for it. (Exhibit 2- Depo.Sordp p. 30 L14-17). It was Plaintiff's responsibility for keeping inventory on the tags. (Exhibit 2- Depo.Sordo p. 31 L15-25; p. 30 L1-14). Plaintiff was a person who wrote the checks for the missing license plates. (Exhibit 2- Depo.Sordo p. 32 L17-18).

23. Plaintiff was responsible for ordering the license plates. (Exhibit 2- Depo.Sordo p. 34 L17-19). Plaintiff was responsible for supervising the clerks to ensure that when a license

plate was issued to the wrong customer it came back to the agency. (Exhibit21- Depo.Sordo p. 37 L11-14). Plaintiff also received the license plates and was responsible for organizing them into the shelves. (Exhibit 2- Depo.Sordo p. 34 L22-24). There were times when Defendant ran out of specialized tags. (Exhibit 2- Depo.Sordo p. 47 L12-17).

24. Plaintiff worked the line every day from 8:30 a.m. until 10:00 a.m. (Exhibit 2- Depo.Sordo p. 43 L4-7). Defendant was doing title transactions for the Kendall Group. (Exhibit 2- Depo.Sordo p. 49 L9-11, L20-25; p. 50 L14-21). Plaintiff conceded that in the year 2014, Defendant lost at least part of the Kendall Group account. Defendant did not continue working for the Kendall Group account doing the same volume of business that it had before. (Exhibit 2- Depo.Sordo p. 48 L4-9, L21-25; p. 49 L9-11).The business lost a lot of money after the loss of the business from Kendall Group. (Exhibit 2- Depo.Sordo p. 49 L16-19). As a result, it came to Plaintiff's attention that employees had to be laid off, including her. (Exhibit 2- Depo.Sordo p. 50 L22-25; p. 51 L1-6).

25. Plaintiff admits that Mr. Prete called to tell her she was being laid off. (Exhibit 2- Depo.Sordo p. 55 L19-23). Plaintiff has no personal knowledge as to why Defendant laid off other employees. (Exhibit 2- Depo.Sordo p. 57 L11-13).

## MEMORANDUM OF LAW

Summary judgment can be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *Allan v. Tyson Foods,*

*Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). There is genuine issue of material fact only where the record as a whole could lead a rational trier of fact to find for the non-moving party. *Id.*

### Counts I and II, Disparate Treatment the ADEA and the FCRA

The ADEA makes it unlawful for employers "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). In ADEA cases, "the plaintiff retains the burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action." *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 177, 129 S. Ct. 2343, 2351, 174 L. Ed. 2d 119 (2009).

The FCRA makes it unlawful for an employer to discriminate because of an employee's age. F.S. § 760.10. The FCRA is interpreted in accordance with federal case law interpreting Title VII as well as the ADEA. *Sunbeam TV Corp. v. Mitzel*, 83 So. 3d 865, 867 n.3 (Fla. 3d DCA 2012).

A plaintiff may establish a prima facie case of age discrimination by (1) providing direct evidence of discriminatory intent by the defendant, (2) presenting statistical proof of a pattern of discrimination by the defendant, or (3) providing other circumstantial evidence. *Carter v. Three Springs Residential Treatment,* 132 F.3d 635, 641 (11th Cir. 1998).

Plaintiff must establish a *prima facie* case by showing: "(1) that she was a member of the protected group of persons between the ages of forty and seventy; (2) that she was subject to adverse employment action; (3) that a substantially younger person filled the position from where she was discharged; and (4) that she was qualified to do the job for which she was rejected." *Kragor v. Takeda Pharmaceuticals America, Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012).

The Eleventh circuit has generally eschewed an overly strict formulation of the elements of a prima *facie case*, particularly in age discrimination cases. *Jameson v. Arrow* Co., 75 F.3d 1528, 1531 (11th Cir. 1996). The ultimate inquiry on summary judgment "is whether an ordinary person could reasonably infer discrimination if the facts presented remained unrebutted." *Id*.

If a Plaintiff establishes a *prima facie* case of discrimination, the defendant employer must articulate a legitimate, nondiscriminatory reason for the challenged adverse employment action. The employer's burden is merely one of production; it need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the employer's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. If the employer articulates one or more reasons, the presumption of discrimination is eliminated and the plaintiff must come forth with evidence sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment action. If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact as to the employer's proffered legitimate business reasons, the employer is entitled to summary judgment on the plaintiff's claim. *Chapman v. AI Transp.,* 229 F.3d 1012, 1024 (11th Cir. 2000).

When a plaintiff chooses to attack the veracity of the employer's proffered reason, the inquiry is limited to whether the employer gave an honest explanation of its behavior. An employer may terminate an employee for a good reason or bad reason without violating federal law. Federal courts do not sit as a super-personnel department that reexamines the employer's business decision or questions whether employment decisions are prudent or fair. The plaintiff is not allowed to recast the employer's proffered legitimate business reasons or substitute her business judgment for that of the employer. The employee may not succeed merely by quarreling

9

with the wisdom of the employer's decision. *Usry v. Liberty Reg'l Med. Ctr., Inc.,* 560 F. App'x 883, 889 (11th Cir. 2014).

When a plaintiff chooses to attack the veracity of the employer's proffered reason the inquiry as to pretext is limited to whether the employer gave an honest explanation of its decision. If he employer honestly believed in the proffered reason, even if mistaken is such belief, there is no violation of federal law. *Id.*; *E.E.O.C. v. Total Sys. Services, Inc.*, 221 F.3d 1171, 1176 (11th Cir. 2000).

**Analysis**

It will be assumed for summary judgment purposes only that Plaintiff can establish a *prima facie* case of discrimination. Defendant has proffered legitimate business reasons as to why Plaintiff was laid off from her employment on September 3, 2014. The first and main reason was a reduction in workforce because Defendant lost its bigger customer, the Kendall Group and approximately 60% of its revenues prior to September 3, 2014. (Stmt.Undisp.Facts Nos. 3-4). The most common and valid legitimate business reason occurs when there is a reduction in workforce. *Barnes v. Gencorp, Inc.,* 896 F.2d 1457, 1465 (6th Cir. 1990). Plaintiff conceded, in part, that the business from Kendall Group was lost. (Stmt.Undisp.Facts No. 24) Plaintiff cannot refute that she was laid off because there was a reduction of force. (Stmt.Undisp.Facts No. 24). She admits that Mr. Prete told her she was being laid off. (Stmt.Undisp.Facts No. 25). Plaintiff cannot dispute that she was laid off for a legitimate business reason.

Defendant has also proffered other legitimate business reasons for the adverse employment action. Plaintiff conceded that she used her cellular phone for personal reasons, at least 3 times a day and that she played games with the cellular telephone. (Stmt.Undisp.Facts No. 21). Plaintiff was reprimanded for such use, yet continued to defy her employer.

10

(Stmt.Undisp.Facts No. 10). Plaintiff refused to take the Miami-Dade County Title Clerk exam. (Stmt.Undisp.Facts No. 11). Plaintiff was inflexible about her schedule and refused to work past 2:00 p.m. (Stmt.Undisp.Facts Nos. 12, 20). Plaintiff was reluctant to work the line and attend the customers. (Stmt.Undisp.Facts No.15). Plaintiff was not a team player and refused to assist her co-workers while she was excessively using her cellular telephone for personal reasons. (Stmt.Undisp.Facts No.13). Plaintiff displayed a lack of interest in her job and did not have the required behavior in order to effectively perform her job duties. (Stmt.Undisp.Facts No.13). Plaintiff failed to perform her job duties by properly maintaining inventory. This resulted in lost license plates. Defendant was required to pay penalties for the lost plates. (Stmt.Undisp.Facts No. 14). Other employees had to use company time locating license plates which Plaintiff failed to account for. (Stmt.Undisp.Facts No.14). Plaintiff had limited effectiveness and often engaged the help of other clerks, rather than performing her job duties. (Stmt.Undisp.Facts No. 16). Plaintiff's ranked low in efficiency amongst the other clerks. (Stmt.Undisp.Facts No. 17).

Defendant had proffered legitimate business reasons that cannot be refuted by Plaintiff. There are no genuine material issues of fact of the alleged adverse employment action and Defendant is entitled to the entry of final summary judgment on Plaintiff's age discrimination claims.

WHEREFORE, Defendant requests that the Court enter summary judgment against Plaintiff.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via transmission of Notices of Electronic Filing generated by CM/ECF, to Blanca R. Sordo, Esq. of Martinez & Sordo, P.A., 7300 North Kendall Drive, Suite 380, Miami, Florida 33156, on this 9th day of February, 2015.

>
> THE LAW OFFICES OF
> EDDY O. MARBAN
> 1600 Ponce De Leon Boulevard, Suite 902
> Coral Gables, Florida 33134
> Telephone (305) 448-9292
> Facsimile (305) 448-9477
> E-mail: marbanlaw@gmail.com
>
> By: *s/Edilberto O. Marban*
>     EDDY O. MARBAN, ESQ.
>     Fl. Bar No. 435960