UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 15-22013-CIV-ALTONAGA/O'SULLIVAN

SONIA SORDO,

    Plaintiff,

vs.

TRAIL AUTO TAG AGENCY, INC.,
a Florida corporation,

    Defendant.
_____/

## SWORN DECLARATION OF RICHARD PRETE

1.     My name is Richard Prete and I have personal knowledge as to the facts set forth herein. I am the owner of the Defendant, TRAIL AUTO TAG AGENCY, INC., a tag agency. I am also the decision maker for the Defendant.

2.     Plaintiff SONIA SORDO was employed at the Defendant tag agency from September 3, 1991 until September 3, 2014. Ms. Sordo was a title clerk responsible for processing titles and registrations for the agency. Ms. Sordo also had ancillary duties which included, keeping track of auto tag inventory.

3.     In 2014, the auto tag agency's biggest client was a franchised automobile dealer, Kendall Group. The group included four automobile dealerships, Kendall Toyota, Kendall Lexus, West Kendall Toyota and West Kendall Lexus. Defendant registered titles and issued auto tags for Kendall Group. In 2014, prior to the time that Plaintiff ceased to be employed with Defendant, approximately 1,500 to 2,000 transactions were processed each month for the Kendall Group.

4.     In the year 2014, Kendall Group began using new technology to process title work and register automobiles. The biggest source of income for the Defendant agency in 2014

was from the Kendall Group. I have personal knowledge from review of the financial records for the agency that approximately 60% of the Defendant tag agency's revenues were lost as a result of losing Kendal Group's business. As a result of the loss in revenues, it was necessary for the Defendant agency to look for ways in which to reduce the expenses and costs of operations.

5. In 2014, a committee was organized to determine how the tag agency could reduce the costs of operations in order to continue in business. The committee made a unanimous decision to reduce the work force so that the business could continue its operations. Thereafter, four employees were laid off, including the Plaintiff SORDO.

6. I was a member of the committee as well Alicia Valledor, Ileana Pita and Luisa Coto. These individuals were employees of the agency and were the most familiar with the day-to-day operations of the company. Each such individual provided input and recommendations to me concerning the reduction of the work force at the auto tag agency.

7. The committee considered several factors in determining which members of the workforce would be laid off. The first and major consideration was whether particular positions were needed and weather the business could continue to operate after eliminating such positions. Another factor considered was the skills, effectiveness and experience of the staff. The committee also considered the reliability of each employee and whether such employees were willing to work full time as opposed to part time. The committee also considered the willingness or flexibility of the staff member to cover all positions at the agency as opposed to the employees' reluctance to work at one or more positions. Another factor considered was employee productivity. Given that the revenues for the agency had declined significantly, it was necessary to consider employees with a heightened effort, work ethic and flexibility.

8. The committee decided to lay off a total of four employees. Plaintiff SORDO was one of four employees who were laid off. The other employees laid off were Yanet Gonzalez, the youngest employee at the agency, 36 years old at the time, Natinda Brizuela and Barbara Martinez.

9. In addition, prior to September 3, 2014, two other employees left their employment at the auto tag agency, Veronica Rodriguez and Elvia Guevara. In total Defendant's staff was reduced by six employees in 2014.

10. I personally observed SORDO using her cellular telephone during working hours for long periods of time and playing games on her cellular telephone in 2014. I personally reprimanded SORDO for excessive use of her personal cellular phone in 2014, but she continued the excessive use of her cell phone in 2014. In addition, there were numerous reports by other employees who observed SORDO's excessive use of the cellular telephone. Luisa Coto, the line supervisor, a member of the committee also observed SORDO playing games on her cellular telephone and using her cellular telephone to make an excessive number of calls, all during business hours. The committee considered this information as well.

11. SORDO was also previously reprimanded by me because she refused to take the Miami-Dade Title Clerk exam. The exam is important because the tag agency cannot be opened unless a certified clerk is present. None of the other three employees who were laid off had the certification. The committee considered this information as well.

12. SORDO was inflexible about her schedule. SORDO did not want to work past 2:00 p.m., and often left her job prior to that time.

13. SORDO was not a team player. She was unwilling to assist her co-workers while she was spending idle time or while engaged in making personal cellular telephone calls or

playing games on her cellular telephone. She displayed a lack of interest in performing her job duties and I personally observed this behavior on her part.

14. SORDO was responsible for inventory at the tag agency. She did not perform her job duties in that she was unable to control the inventory. SORDO failed to order tags on a timely basis causing the company to run out of tags when needed to serve customers. There were a number of tags which were unaccounted for and Defendant had to pay the cost of such tags to the State of Florida. Between 2011 and 2014 the agency had to repay the State of Florida $1,671.00 for lost tags. Since SORDO ceased to be employed, the company has not incurred any lost tag penalties. Moreover, as a result of the misplaced auto tags, other employees' time was used looking for the lost auto tags to find them. This disrupted the business operation because of SORDO's deficiencies in performing her inventory related duties.

15. SORDO was also reluctant to work on the public line in the afternoon. The public line was where customers of the agency come in and dealt with the agency's employees in relation to automobile license plates and registration of titles for vehicles and vessels. It was essential to the success of the agency to have a clerk who was willing to work with the retail customers in order to ensure fast and efficient service. SORDO was reluctant to work the line in the afternoons. She was also reluctant to help her co-workers when they were working the line and needed SORDO's assistance.

16. SORDO had limited effectiveness and she often engaged the help of other clerks thereby detracting them from doing their job and disrupting the effective and efficient operation of the agency's business affairs.

17. When the committee met, it considered employee efficiency. SORDO ranked near the bottom among the clerks for efficiency.

18. SORDO was not replaced by a younger individual because no one was hired to replace her or to take over her job duties. All duties previously performed by SORDO were assumed by other employees who remained working at the agency.

19. As a result of the aforementioned business reasons SORDO was laid off from further employment with TRAIL AUTO TAG AGENCY, INC., on September 3, 2014.

I declare under penalty of perjury under the laws of the United States of America, and under 28 U.S.C. § 1746, that the foregoing is true and correct.

*Richard Prete*
RICHARD PRETE

Date Feb 9, 2016